1
2
3
4
5
6
7
8

9                     UNITED STATES DISTRICT COURT

10                    EASTERN DISTRICT OF CALIFORNIA

11

12   BRENDA D. DOWLING,                    No.  1:14-cv-01041-TLN-SAB

13             Plaintiff,

14        v.                               **ORDER**

15   BANK OF AMERICA, NATIONAL
     ASSOCIATION, AKA BANK OF
16   AMERICA, N.A., AKA BANK OF
     AMERICA; and BAC HOME LOANS
17   SERVICING, AKA BANK OF AMERICA
     HOME LOANS,
18
              Defendants.
19

20
          This matter is before the Court on Defendants Bank of America, National Association,

21
     and Defendant BAC Home Loans Servicing's ("Defendants") Motion to Dismiss (ECF No. 9)

22
     Plaintiff Brenda Dowling's ("Plaintiff") Complaint (ECF No. 1).  For the reasons discussed

23
     below, the Motion to Dismiss is GRANTED in part and DENIED in part.

24
     I.      FACTUAL BACKGROUND

25
          As alleged in Plaintiff's Complaint, Plaintiff and her former husband purchased a single

26
     family home in Visalia, California, on October 1, 2008, with a loan in the amount of $291,157

27

28
                                          1

from Provident Mortgage Corporation (the "loan").[1]  (ECF No. 1 at ¶ 7.)  On October 30, 2008, the loan was transferred from Provident Mortgage Corporation to Countrywide Home Loans Inc., and then from Countrywide Home Loans Inc. to Defendant Bank of America Home Loans Servicing ("BAC Home Loans").  (ECF No. 1 at ¶ 8.)  In November of 2009, Plaintiff and her husband contacted BAC Home Loans and requested assistance with their mortgage payments due to a reduction of income.  (ECF No. 1 at ¶ 10.)

On May 18, 2010, Plaintiff and her husband received a letter from BAC Home Loans stating that in order to determine Plaintiff's eligibility for payment assistance, Plaintiff must complete and return various forms, such as an Authorization and Acknowledgment form and documentation of their financial difficulties.  (ECF No. 1 at ¶ 10.)  Plaintiff and her husband completed and mailed each of the requested documents to BAC Home Loans on May 28, 2010. (ECF No. 1 at ¶ 11.)  On July 1, 2010, Plaintiff and her husband received a letter from Defendant BAC Home Loans notifying them that they were approved for assistance subject to the completion of several additional documents including an Offer of Partial Claim and Agreement and a Subordinate Note to the Secretary of Housing and Urban Development ("HUD") for $15,064.12, which was the amount Plaintiff owed in arrears on the Loan.[2]  (ECF No. 1 at ¶ 12.)

The Offer of Partial Claim and Agreement terms required that "[t]he first regular monthly payment due on the mortgage once the Partial Claim agreement has been returned will begin on 9/1/2010, the payment amount is $2095.76, and must be received in certified funds."  (Plaintiff's Exhibits, ECF No. 1-2 at 10.)  The Offer of Partial Claim and Agreement also requested that

---

[1] The Court has omitted from this section those facts non-material to disposition of the instant motion.

[2] Defendants' Motion to Dismiss directs the Court to HUD's website, which at the time of drafting this Court's Order states:  "Under the FHA-HAMP Partial Claim Option, the Lender will advance funds on behalf of the Borrower in an amount necessary to reinstate the delinquent loan. The maximum value of all outstanding Partial Claims for a given loan cannot exceed 30 percent of the outstanding Unpaid Principal Balance (UPB) as of the date of the default. The Borrower will execute a Promissory Note and Subordinate Mortgage payable to HUD. Currently, these Promissory or "Partial Claim" Notes assess no interest and are not due and payable until the Borrower either pays off the first mortgage or no longer owns the property."  *See* Partial Claim Frequently Asked Questions (Accessed April 8, 2015), http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/faqpc.  The Court takes judicial notice of this statement as it appears on HUD's website, solely for the purpose of explaining HUD's general role with respect to a Partial Claim Agreement.  *See* Fed. R. Evid. 201 (the Court may take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

1    Plaintiff "remit funds for [her] payment to be received in [BAC Home Loans'] office by no later
2    than the 15th of each month."  (ECF No. 1-2 at 10.)  Each of the documents included in the
3    correspondence included the notation "FHA - Partial Claim" in the upper left hand corner.  (ECF
4    No. 1-2 at 3–19.)

5           The Offer of Partial Claim and Agreement also stated that the monthly payments would be
6    held in a suspense account, which meant that the funds would not be applied to the loan until the
7    claim was paid by HUD.  (ECF No. 1-2 at 10.)  The Offer further stated that once BAC Homes
8    Loans received the claim money from HUD, all funds held in suspense would be applied to the
9    loan. (ECF No. 1-2 at 10.)  The Offer also stated that "[i]f this agreement is canceled, any
10   remaining funds in the suspense account will be credited towards your remaining obligation and
11   will not be refunded."  (ECF No. 1-2 at 10.)

12          According to the Complaint, Plaintiff mailed payment by cashier's checks to Defendant
13   BAC Home Loans in the amounts of $2,096.78 dated August 31, 2010, $2095.76 dated
14   September 30, 2010, and $2095.76 dated November 1, 2010.  (ECF No. 1 at ¶ 14.)  BAC Home
15   Loans received and deposited these payments.  (ECF No. 1 at ¶ 14.)

16          Subsequently, Plaintiff and her husband received three "Notice of Intent to Accelerate"
17   letters from Defendant BAC Home Loans, on September 22, 2010, October 21, 2010, and
18   November 17, 2010, stating that Plaintiff's loan was in default in the amount of $12,619.56.
19   (ECF No. 1 at ¶ 16.)  Plaintiff alleges that the loan was not in default because the Partial Claim
20   Agreement with Bank of America brought the loan current.   (ECF No. 1 at ¶ 16.)  Plaintiff also
21   alleges that via telephone, BAC Home Loans told Plaintiff that the Partial Claim Agreement was
22   not completed because Plaintiff did not qualify.  (ECF No. 1 at ¶ 18.)

23          On November 21, 2010, Plaintiff's husband "called Defendant BAC Home Loans, and
24   was told that the [l]oan was now 8 payments in default, such that BAC Home Loans did not credit
25   Plaintiff's payments of August 31, 2010, September 30, 2010, and November 2, 2010 – which
26   total $6,288.30."  (ECF No. 1 at ¶ 19.)

27          On July 1, 2011 Plaintiff was notified by Defendant BAC Home Loans that the servicing
28   of the loan was transferred to Defendant Bank of America, N.A. (ECF No. 1 at ¶ 23.)  Plaintiff

1  received a collection communication from Bank of America, N.A., which stated that Plaintiff

2  owed $309,505.41 on the Loan.  (ECF No. 1 at ¶ 23.)  The Complaint asserts that the amount was

3  inaccurate and did not account for Plaintiff's three payments in August, September, and October

4  2010, which totaled $6,288.30.  (ECF No. 1 at ¶ 23.)

5       On September 10, 2012, Defendant Bank of America, N.A., recorded a notice of default

6  on Plaintiff's house.  (ECF No. 1-2 at 87.)  As a result, "numerous real estate agents came to

7  Plaintiff's subject residence wanting to short sell her house."  (ECF No. 1 at ¶ 37.)

8       Plaintiff received numerous payoff statements from Bank of America, N.A., which

9  incorrectly stated the total amount owed.  (ECF No. 1 at ¶ 39–42.)  On September 25, 2012,

10  Plaintiff requested that Bank of America, N.A., give a third party, John Kinsfather permission to

11  speak and receive any and all information on behalf of her in regards to her mortgage account

12  with Bank of America, N.A.  (ECF No. 1 at ¶ 36.)  Kinsfather communicated to Defendants

13  numerous times in writing and over the telephone that Defendants were only to contact Kinsfather

14  regarding Plaintiff's loan, which Defendants disregarded.  (ECF No. 1 at ¶ 50.)

15       On April 28, 2014, Plaintiff received correspondence from "Trustee Corps" informing

16  Plaintiff that her home was in foreclosure and title would be transferred to Bank of America, N.A.

17  (ECF No. 1 at ¶ 51.)[3]

18       On July 2, 2014, Plaintiff filed the instant Complaint for damages and injunctive relief for:

19  (1) breach of contract; (2) conversion; (3) intentional infliction of emotional distress; (4) violation

20  of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962e(2)(A); (5) violation of the Fair Debt

21  Collection Practices Act, 15 U.S.C. § 1962d(5); (6) violation of the California Homeowner's Bill

22  of Rights, California Civil Code §§ 2920, *et seq.*; and (7) violation of the California Business and

23  Professions Code §§ 17200 *et seq.*

24      II.    <u>STANDARDS OF LAW</u>

25      **A. Federal Rule of Civil Procedure 12(b)(6)**

26       Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

27

28

---

[3] Defendants assert that the property is not actively in foreclosure and there is no sale date, because Plaintiff has accepted, and is paying under, a loan modification agreement recorded on April 25, 2014.  (ECF No. 9 at 1.) Defendants include the signed loan modification agreement in in their Request for Judicial Notice. (*infra*)

1    statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556

2    U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

3    defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic*

4    *v. Twombl*y, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

5    pleading standard relies on liberal discovery rules and summary judgment motions to define

6    disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*,

7    534 U.S. 506, 512 (2002).

8        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

9    *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

10   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

11   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

12   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

13   relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

14   factual content that allows the court to draw the reasonable inference that the defendant is liable

15   for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

16       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

17   factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

18   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

19   unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

20   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

21   elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

22   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

23   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

24   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

25   been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

26   459 U.S. 519, 526 (1983).

27       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

28   facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

*Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

III.     ANALYSIS

**A.  Judicial Notice**

Defendants request judicial notice of the following: Exhibit A, a Loan Modification Agreement recorded in the Official Records of Tulare County on April 24, 2014; Exhibit B, a Deed of Trust, dated October 15, 2008 and recorded in the Official Records of Tulare County on October 24, 2008; Exhibit C, the Interspousal Grant Deed dated August 26, 2012 and recorded in the Official Records of Tulare County on August 29, 2012; and Exhibit D, the Notice of Default

1    recorded in the Official Records of Tulare County on September 10, 2012.  (ECF No. 10.)

2           "The court may judicially notice a fact that is not subject to reasonable dispute because it:

3    (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

4    readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

5    Evid. 201(b).  "Courts may take judicial notice of some public records, including the records and

6    reports of administrative bodies."  *U.S. v. Richie*, 342 F.3d 903, 909 (9th Cir. 2003) (internal

7    quotations omitted).  The documents at issue are public records, and Defendants' request is

8    unopposed.  Therefore the request is GRANTED.

9        **B.  Indispensable Party**

10          Defendants argue that Plaintiff's Complaint (ECF No. 1) is defective and must be

11   dismissed in its entirety because it fails to include Plaintiff's former husband, Brent Dowling, as

12   an indispensable party.  (ECF No. 9 at 14.)  Defendants assert that absent Brent Dowling's

13   inclusion in this suit, they run the risk of additional lawsuits on the same matter and potentially

14   inconsistent outcomes.  (ECF No. 9 at 15.)

15          A court may dismiss a complaint if the pleading fails to name a party indispensable to the

16   pending action.  *See* Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19(a).  "A party is indispensable . . .

17   if in its absence, the [C]ourt cannot accord complete relief among the existing parties . . . or if the

18   absent party claims an interest relating to the subject of the action, and one of two other

19   conditions is met."  *Medrano v. Caliber Homes Loans, Inc.*, 2014 U.S. Dist. LEXIS 177576, at

20   *13 (C.D. Cal. Dec. 19, 2014) (citations omitted).  "The two conditions by which a party is

21   indispensable under Rule 19(a)(1)(B) are met . . . if 'disposing of the action' without the party

22   claiming an interest 'may . . . as a practical matter impair or impede' that party's 'ability to

23   protect the interest,' or if disposing of the action without the absent party would 'leave an existing

24   party subject to a substantial  risk of incurring . . . inconsistent obligations because of the

25   interest.'"  *Id.* at 13-14. (citing Fed. R. Civ. P. 19(a)(1)(B)(i)—(ii)).

26          When a party makes a motion under Rule 12(b)(7), the court undertakes a three-part

27   inquiry.  First, it asks if the absent party is "necessary (i.e., required to be joined if feasible) under

28   Rule 19(a)."  *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179

(9th Cir. 2012).  If so, the court asks whether it is "feasible to order that the absent party be joined."  *Id.*  If it is not feasible to join the absent party, the court asks whether the case can proceed without it — and if not, dismisses the action.  *Id.*  The burden of persuading the court that a party must be joined (or the case dismissed) falls to the movant.  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

Here, Defendants assert that Brent Dowling "may also have his own claims concerning the alleged breach of the Partial Claim," and directs the Court to the fact that Brent Dowling was a co-signor on the documents associated with the Partial Claim Agreement.  (ECF No. 9 at 14.)  However, the Court also notes that Defendants' attached documentation includes a recorded Interspousal Grant Deed, recorded on August 29, 2010, in which Brent Dowling transferred the Property to Plaintiff.  The pleadings do not contain any affidavits or references to extra-pleading evidence indicating that Brent Dowling has expressed an interest in this action.  Without more, Defendants do not meet their burden of showing Brent Dowling is necessary to this action or that the case cannot proceed without him.  Therefore, Defendant's Motion to Dismiss based on failure to add an indispensable party is DENIED.

### C.  Breach of Contract (Claim I)

To sustain a claim for breach of contract, Plaintiff must allege: (1) the existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; (3) Defendants' breach; and (4) resulting damage to the Plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968).

Defendants do not dispute the existence of a written contract.  Thus, the first element is satisfied.

As to the second element, liberally construed, the Complaint alleges that Plaintiff brought the loan current from $15,064.12 in arrears when Plaintiff executed a Deed of Trust and Subordinate Note in favor of HUD.  Plaintiff also alleges she made three monthly payments to Defendants totaling $6,288.30, which were required under the terms of the Partial Agreement. (ECF No. 1 at ¶ 54.)  Plaintiff's allegations that she performed under the terms of the contract are

1    sufficient to satisfy the second element.[4]

2           As to the third element, under the terms of the Agreement, as consideration for Plaintiff's

3    performance, Defendants would bring her loan to current status and set out a monthly payment

4    schedule.  (ECF No. 1-2 at 8 & 10.)  Liberally construed, the Complaint alleges that despite

5    Plaintiff's performance, Defendants accelerated her loan and inaccurately stated either the amount

6    she was in arrears or the total amount owed on Plaintiff's mortgage, because they did not credit:

7    1) the $15,064.12 which HUD was supposed to advance; or 2) the three monthly payments

8    totaling $6,288.30.  Thus, Plaintiff's allegations are sufficient to establish the third element,

9    breach

10          As to the fourth element, at minimum Plaintiff's allegation that Defendants never credited

11   her for the $6,288.30 amount she made in monthly payments would establish some damages and

12   thereby satisfy the fourth element.  (ECF No. 1 at ¶ 57.)

13          Drawing the factual allegations in favor of Plaintiff, the Complaint adequately states a

14   claim for breach of contract.  Therefore as to Plaintiff's first claim, Defendants' Motion to

15   Dismiss is DENIED.

16   **D.   Conversion (Claim II)**

17          Conversion is the wrongful exercise of dominion over the property of another.  *Farmers*

18   *Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997).  The elements of a conversion are as

19   follows: (1) Plaintiff's ownership or right to possession of the property at the time of the

20   conversion; (2) Defendant's conversion by a wrongful act or disposition of property rights and;

21   (3) damages.  *Id.* "It is not necessary that there be a manual taking of the property; it is only

22   necessary to show an assumption of control or ownership over the property, or that the alleged

23   converter has applied the property to his own use."  *Id.* at 451-52.  Money cannot be the subject

24   of a cause of action for conversion unless there is a specific, identifiable sum involved, such as

25   where an agent accepts a sum of money to be paid to another and fails to make the payment.

26   *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1491 (2006) (citations omitted).  "California

---

[4] The Court does not locate in the Complaint or Motion to Dismiss any discussion of whether HUD actually advanced funds to Defendants.  This should be clarified in future filings.  Plaintiff alleges she did make, and was not credited for, the three aforementioned monthly payments, totaling $6,288.30.

1  courts generally permit actions for conversion where a readily ascertainable sum has been

2  misappropriated, commingled, or misdirected." *Sims v. AT&T Mobility Servs.* LLC, 955 F. Supp.

3  2d 1110, 1118 (E.D. Cal. 2013); *see also Weiss v. Marcus*, 51 Cal. App. 3d 590, 599 (1975).

4  　　　　Plaintiff states that she made three payments totaling $6,288.30 which Defendants

5  received and deposited, and for which she never received credit.  (ECF No. 1 at ¶ 62.)

6  Defendants argue that Plaintiff fails to state a claim for conversion because the claim arises under

7  the terms of the Partial Claim and does not give rise to the independent tort of conversion.  (ECF

8  No. 9 at 21.)  Defendant cites *Imperial Valley Co. v. Globe Gran and Milling* Co., 187 Cal. 352,

9  353–55 (1921) in support, which was an unsuccessful conversion action brought by a landlord

10  who alleged his tenant sold cotton to pay off debts rather than fulfilling a contract to provide the

11  landlord a portion of the crop.  Simply put, the instant case is not analogous, because the landlord

12  in that case never had title to the cotton, but rather claimed that it was owed under the contract.

13  *Id.*  Here, Plaintiff has identified a specific sum of money that she gave to Defendants in three

14  payments, totaling $6,288.30, and thus there is a "specific sum capable of identification."  *Weiss*,

15  51 Cal. App. 3d at 599.  Therefore, Defendants' Motion to Dismiss Plaintiff's second claim is

16  DENIED.

17  　　**E. Intentional Infliction of Emotional Distress (Claim III)**

18  　　　　The elements for the tort of intentional infliction of emotional distress are as follows: "(1)

19  extreme and outrageous conduct by the defendant with the intention of causing, or reckless

20  disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or

21  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

22  the defendant's outrageous conduct . . . . Conduct to be outrageous must be so extreme as to

23  exceed all bounds of that usually tolerated in a civilized community." *Christensen v. Sup. Court*,

24  54 Cal. 3d 868, 903 (1991) (internal quotation marks and citations omitted); *see also Cook v.*

25  *Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990).

26  　　　　Conduct is extreme and outrageous when it is of a nature which is especially calculated to

27  cause, and does cause, mental distress.  *Ramirez v. Barclays Capital Mortg.*, 2010 U.S. Dist.

28  LEXIS 64226, at *28 (E.D. Cal. June 25, 2010).  Liability does not extend to mere insults,

indignities, threats, annoyances, petty oppressions, or other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 617 (1989).  To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Christensen*, 54 Cal. 3d 868 at 903.

"In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress."  *Ross v. Creel Printing & Publishing Co.*, 100 Cal. App. 4th 736, 745 (2002) (citing *Bundren v. Superior Court*, 145 Cal. App. 3d 784 (1983)).  "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment."  *Bundren*, 145 Cal. App. 3d at 789.  Such conduct is only outrageous if it goes beyond "all reasonable bounds of decency."  *Bundren*, 145 Cal. App. 3d at 789.  Further, "[t]he assertion of an economic interest in good faith is privileged, even if it causes emotional distress."  *Ross*, 100 Cal. App. 4th at 745, n. 4 (citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 395 (1970)); *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 888 (1992).

Plaintiff alleges that Defendants engaged in a pattern of deception, tortious conduct, and harassment in response to Plaintiff's attempts to secure a loan modification.  Defendants alleged actions include passing her from one customer service representative to another, requiring Plaintiff to continue to resubmit documents to new customer service representatives, refusing to acknowledge the Partial Claim and Agreement, refusing to acknowledge the $6,288.30 Plaintiff paid, and misstating the balance owed on the loan.  (ECF No. 1 at ¶ 67.)  Viewing Plaintiff's allegations in a favorable light, they  do not amount to conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Christensen,* 54 Cal. 3d at 904.  Therefore, the Motion to Dismiss Plaintiff's third claim is GRANTED with leave to amend.[5]

---

[5]A cause of action for intentional infliction of emotional distress is subject to the two-year limitations period for personal injury claims set forth in California Civil Procedure Code § 335.1.  "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant."  *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992).  The tort of intentional infliction of emotional distress is not complete until the effect of the defendants' conduct results in severe emotional distress; that is the time the cause of action accrues. *Kiseskey v. Carpenters' Trust,* 144 Cal. App. 3d 222, 232 (1983).

**F.   Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1962e(2)(A) & 15 U.S.C. § 1962d(5) (Claims IV & V)**

Plaintiff alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962e(2)(A) by falsely representing the amount owed on Plaintiff's mortgage loan.  (ECF No. 1 at ¶ 74.)  Plaintiff further argues that Defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1962d(5) by causing the telephone to ring or engaging any person in telephone conversation repeatedly with the intent to annoy, abuse, or harass.  (ECF No. 1 at ¶ 77.)  Plaintiff asserts she instructed Defendants in writing to communicate with a third party, John Kinsfather, on her behalf, and Defendants ignored Plaintiff's request.  (ECF No. 1 at ¶ 77.)  Defendants respond that they are not "debt collectors" under the FDCPA.  (ECF No. 9 at 22.)

The purpose of the FDCPA is to "prohibit debt collectors from engaging in unfair and deceptive practices in the collection of consumer debts, and to require debtors to act fairly into entering into and honoring such debts."  *See* 15 U.S.C. § 1692.  "To be held liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of "debt collector."  *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1198-99 (C.D. Cal. 2008) (finding defendant was not "collecting a debt" when it sought to foreclose on property).  A "debt collector" under the FDCPA is therefore either (1) "a person" the "principal purpose" of whose business is the collection of debts (whether on behalf of himself or others); or (2) "a person" who "regularly" collects debts on behalf of others (whether or not it is the principal purpose of his business).  *Izenberg*, 589 F.Supp. 2d at 1198-99.  The FDCPA excludes from this definition any person collecting or attempting to collect a debt originated by that person.  *Id.* § 1692a(6)(F)(ii).  Further, "[t]he law is well-settled that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA."  *Costantini v. Wachovia Mortg. FSB*, 2009 U.S. Dist. LEXIS 53669, 2009 WL 1810122, at *3 (E.D. Cal. June 24, 2009) (internal alterations omitted) (quoting *Hepler v. Wash. Mut. Bank, F.A.*, 2009 U.S. Dist. LEXIS 33883, 2009 WL 1045470 at *4 (C.D. Cal. Apr. 17, 2009)).

Plaintiff does not provide authority for the position that Defendants are "debt collectors"

1   under the FDCPA. Thus, Plaintiff's fourth and fifth claims under the FDCPA are DISMISSED

2   with LEAVE TO AMEND.

3       **G. Violation of the California Homeowner's Bill of Rights, California Civil Code §**

4           **2923.7 (Claim VI)**

5           Plaintiff alleges a violation of California Civil Code § 2923.7, which provides, in relevant

6   part, that upon request from the borrower, Defendant must "promptly establish a single point of

7   contact" with the borrower, in order to facilitate communication regarding an "available

8   foreclosure prevention alternative." Cal. Civ. Code § 2923.7. "A bank violates this provision if it

9   assigns a single point of contact, but then changes that point of contact multiple times."

10  *Rahbarian v. JP Morgan Chase*, 2014 U.S. Dist. LEXIS 158719, at *10 (E.D. Cal. Nov. 10,

11  2014) (citing *Mann v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 15111, at *12-14 (C.D. Cal.

12  Feb. 3, 2014)). For example, in *Mann*, the plaintiffs adequately stated a claim when they alleged

13  that as a result of their constantly changing SPOC, they (1) were required to repeatedly reinform

14  new individuals about the details of their loan and (2) received contradictory information from

15  different SPOCs. *Mann*, 2014 U.S. Dist. LEXIS 15111, at *13.

16          Defendants argue that Plaintiff has failed to allege sufficient facts to support a claim under

17  § 2923.7. Defendants also argue that the letters attached to the Complaint, which were sent by

18  employees of Defendants to Plaintiff and her husband, show that these employees reached out to

19  Plaintiff regarding her loan.[6] (ECF No. 9 at 14.) However, the Complaint describes several

20  specific interactions between Plaintiff and employees of Defendants, in which Plaintiff attempted

21  to acquire information about her loan or further the modification process and was allegedly

22  unable to do so. (*See* ECF No. 1 ¶¶ 29–51.) Plaintiff states in her Opposition that she was

23  "passed among sixteen different BANA/BAC Home Loans representatives who repeatedly

24  required Plaintiff to resubmit required information and documentation, but continually denied her

25  requests for a loan modification." (ECF No. 21 at 25.) Drawing the facts in favor of Plaintiff,

26  this is adequate to state a claim under § 2923.7. Thus, Defendants' Motion to Dismiss Plaintiff's

27  _____

28  [6] To the Complaint, Plaintiff attaches several pieces of correspondence issued by Defendants to Plaintiff regarding her loan. The Court notes these exhibits, but Plaintiff does not request judicial of them.

1    sixth claim is DENIED.

2        **H.  California Business and Professions §§ 17200, *et seq.* (Claim VII)**

3            California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits and provides civil

4    remedies for, unfair competition, which it defines as "any unlawful, unfair or fraudulent business

5    act or practice . . ."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011) (quoting Cal.

6    Bus. & Prof. Code § 17200).  Its purpose "is to protect both consumers and competitors by

7    promoting fair competition in commercial markets for goods and services."  *Id.*  (citing *Kasky v.*

8    *Nike, Inc.*, 27 Cal 4th 939, 949 (2002)).  To bring a claim under the UCL, a plaintiff must have

9    "suffered injury in fact and … lost money or property as a result of the unfair competition."  *Hall*

10   *v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008) (quoting Cal. Bus.  Prof. Code § 17204).

11           To take the "unlawful" prong of § 17200: the statute "borrows violations of other laws and

12   treats [them] . . . as unlawful business practices independently actionable under section 17200."

13   *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992) (internal quotation marks and

14   citations omitted).  "Violation of almost any federal, state, or local law may serve as the basis for

15   a[n] [unfair competition] claim."  *Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098

16   (9th Cir. 2008) (citing *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994*)). See*

17   *Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114, 1122 (9th Cir. 2009)

18   ("California's UCL has a broad scope that allows for 'violations of other laws to be treated as

19   unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts

20   and practices not specifically proscribed by any other law.")

21           Plaintiff's allegations include that she was not credited for the three monthly payments she

22   made, totaling $6,288.30.  The Court has found Plaintiff has alleged sufficient facts to proceed

23   with her breach of contract and conversion claims, as well as alleging sufficient facts to proceed

24   under the HBOR.  Therefore, Plaintiff has alleged an economic injury resulting from alleged

25   unlawful conduct, and so meets the requirements to state a claim under the UCL.  Thus,

26   Defendants' Motion to Dismiss Plaintiff's seventh claim is DENIED.

27   //

28   //

                                        14

1    I.   <u>CONCLUSION</u>

2    For the foregoing reasons, it is hereby ORDERED:

3    1.   Defendants' Motion to Dismiss Plaintiff's First, Second, Sixth, and

4         Seventh claims is DENIED.

5    2.   Plaintiff's Third, Fourth, and Fifth claims are DISMISSED with leave to amend.

6    3.   Plaintiff is granted 30 days from the date on which this Order is filed to file an Amended

7         Complaint.

8    4.   Defendants shall file their responsive pleading within 21 days of service of the Amended

9         Complaint.

10

11   Dated:  May 28, 2015

12

13                                          Troy L. Nunley
                                            United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    15