UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA D. DOWLING,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA, N.A. and BAC HOME LOANS SERVICING,<br><br>　　　　　Defendants. | No. 1:14-cv-01041-DAD-SAB<br><br>ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 61) |

This matter is before the court on defendant's[1] motion for partial summary judgment. On May 16, 2017, the motion came before the court for hearing. Attorney John Drooyan appeared telephonically on behalf of plaintiff, and attorney Alison Lippa appeared telephonically on behalf of defendant. Having reviewed the parties' briefing and heard oral argument, and for the following reasons, defendant's motion for partial summary judgment will be granted.

/////

/////

/////

---

[1] Defendant Bank of America, N.A. moves on behalf of itself and as successor by merger to defendant BAC Home Loans Servicing LP. (*See* Doc. No. 61-1 at 1.) For purposes of this order, defendants shall be referred to individually and collectively as defendant "Bank of America."

1

**BACKGROUND**

**A.  Factual Background[2]**

On October 15, 2008, Brenda Dowling and her then-husband, Brent Dowling, obtained a mortgage loan from Provident Mortgage Corporation ("Provident") for their real property located at 4040 West Iris Avenue, in Visalia, California.  (DMF ¶ 1.)  The note was insured by the Federal Housing Authority ("FHA") and secured by a deed of trust.  (*Id.*)  That same month, Countrywide Bank, FSP ("Countrywide") acquired the interest in the Dowlings' loan from Provident.  (DMF ¶¶ 2, 13–14.)  Countrywide Home Loans Servicing LP ("CHLS"), which serviced the loan from its origination on October 15, 2008, changed its name to BAC Home Loans Servicing LP ("BAC Home Loans") in 2009, before it merged with Bank of America, N.A. in 2011.  (DMF ¶ 3.)

Due to financial difficulties, the Dowlings first defaulted on their loan obligations in September 2009.  (DMF ¶ 4; PMF ¶ 27.)   On July 1, 2010, the Dowlings received correspondence from Bank of America notifying them that they qualified for certain loan repayment assistance, and which included a partial claim commitment and offer to effectuate a partial claim through FHA.  (Compl. ¶ 12, Ex. 4.)  The Dowlings subsequently executed a partial claim deed of trust, which was recorded on August 12, 2010.  (DMF ¶ 6.)  A full reconveyance of that partial claim deed of trust was recorded on March 10, 2013.  (DMF ¶ 7.)  In the months following recordation of the partial claim deed of trust, plaintiff alleges that she and her husband received three notices of intent to accelerate from BAC Home Loans, each stating that their loan was in default.  (Compl. ¶ 61.)

On September 10, 2012, the trustee recorded a notice of default and election to sell under the deed of trust, which indicated that the Dowlings were in arrears on their loan as of September 7, 2012.  (DMF ¶ 8.)  Because BAC Home Loans continued to claim there was a default on the Dowlings' loan, plaintiff alleges that Bank of America breached the terms of the 2010 partial

---

[2] The relevant facts that follow are principally derived from plaintiff's amended complaint (Doc. No. 25) ("Compl."); defendant's statement of material facts (*see* Doc. Nos. 61-3, 66-6 ¶¶ 1–26, 67-1) ("DMF"); and plaintiff's statement of additional material facts (*see* Doc. Nos. 66-6 ¶¶ 27–57, 67-2) ("PMF").

claim deed of trust.  (*See* Compl. ¶¶ 58–61.)  No trustee sale was ever set.  (DMF ¶ 9.)

On April 3, 2014, plaintiff Brenda Dowling executed and accepted a permanent loan modification, which forgave $25,000 of the Dowlings' principal balance on the mortgage loan.  (DMF ¶ 10.)  After accepting the loan modification, plaintiff received an additional $50,000 in principal forgiveness.  (DMF ¶ 11.)

**B.     Procedural Background**

Plaintiff Brenda Dowling commenced this action on July 2, 2014, against defendant Bank of America.  (Doc. No. 1.)  This action now proceeds on plaintiff's amended complaint, in which plaintiff asserts the following causes of action: (1) breach of contract, (2) conversion, (3) intentional infliction of emotional distress ("IIED"), (4) violations of the Fair Debt Collection Practices Act ("FDCPA"), (5) a violation of the California Homeowner's Bill of Rights ("HBOR"), and (6) violations of California's Unfair Competition Law.

On April 11, 2017, defendant Bank of America filed the instant motion for partial summary judgment.  (Doc. No. 61.)  Specifically, defendant moves for summary judgment as to plaintiff's IIED, FDCPA, and HBOR causes of action.  (*Id.* at 2.)  On May 2, 2017, plaintiff Dowling filed her opposition to the motion.[3]  (Doc. No. 66.)  On May 9, 2017, defendant Bank of America filed its reply.  (Doc. No. 67.)

/////

/////

/////

---

[3]  Plaintiff's fifty-five-page opposition to defendants' motion for summary judgment fails to comply with this court's standard procedures, which limits such briefs to twenty-five pages.  *See* http://www.caed.uscourts.gov/caednew/assets/File/ DAD%20Standard%20Information _1_23_16.pdf (last updated Jan. 20, 2017).  Immediately after defendant raised concerns regarding plaintiff's lack of compliance with this court's standard procedures and Local Rules, plaintiff's counsel filed a request to extend the page limitation on plaintiff's previously filed opposition brief.  (Doc. No. 68.)  Therein, plaintiff's counsel alleged several unrelated failures on the part of defendant's counsel, but neither acknowledged this court's rules nor satisfactorily justified his request for additional pages of briefing.  While plaintiff counsel's request is indeed puzzling, the court will nonetheless consider the opposition brief in its entirety, in the interests of properly considering and resolving on the merits the pending motion for partial summary judgment.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, as plaintiff does here, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson*, 477 U.S. at 250; *Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

**A.     Plaintiff's Third Cause of Action: Intentional Infliction of Emotional Distress**

The elements of a claim for IIED under California law are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of

5

causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). With respect to the first element, the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1051 (citations and internal quotations omitted). With respect to the second element, "[s]evere emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* (citations and internal quotations omitted).

In her amended complaint, plaintiff bases her IIED claim on an alleged "pattern of deception, tortious conduct, and harassment." (Compl. ¶ 72.) Specifically, plaintiff references defendant's use of several different customer service representatives during the loan modification process, repeated requests for the same documents during that process, refusal to acknowledge the executed partial claim deed of trust, refusal to credit the amount plaintiff paid pursuant to the partial claim deed of trust, and repeated misstatements regarding the balance owed on the Dowlings' loan. (*Id.*) Plaintiff alleges that the cumulative nature of such conduct constitutes the extreme and outrageous conduct necessary in an IIED claim. (*Id.*)

The court previously dismissed an IIED cause of action in plaintiff's original complaint, which pled substantially identical facts. (*See* Doc. No. 24 at 11.) Having reviewed the evidence before it on summary judgment, the court now concludes that no reasonable jury could find liability with respect to plaintiff's IIED claim. In her opposition to the pending motion, plaintiff repeats several broad allegations of misconduct without referencing any specific evidence presented by her on summary judgment. For example, plaintiff argues that defendant engaged in conduct that amounts to intimidation, deception, and harassment, and that it denied her numerous requests for a loan modification. (*See* Doc. No. 66 at 46, 50–51.) Even if such conduct were supported by evidence, it would not amount to conduct of an extreme or outrageous nature necessary to prevail in an IIED claim. Moreover, plaintiff has cited no evidence before the court on summary judgment bearing on defendant's intent to cause, or reckless disregard of the

6

probability of causing, emotional distress.[4] In the absence of a genuine dispute of material fact, summary judgment as to plaintiff's cause of action for IIED must be granted in favor of defendants.

**B.      Plaintiff's Fourth and Fifth Causes of Action: Violations of Fair Debt Collection Practices Act**

The FDCPA, 15 U.S.C. § 1692, et seq., imposes civil damages on "debt collectors" for certain types of abusive debt collection practices. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010); *Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2016) (citing 15 U.S.C. §§ 1692d–f, 1692k); *see also* § 1692(e) (stating the purpose of the FDCPA as protecting consumers against abusive practices by debt collectors). Plaintiff's amended complaint alleges that defendant is liable as a debt collector for (1) false representation of the character, amount, or legal status of her debt, pursuant to § 1692e(2)(A); and (2) repeatedly or continuously making telephone calls to plaintiff with the intent to harass her, pursuant to § 1692d(5). (*See* Compl. ¶¶ 78–85.) In moving for summary judgment, defendant Bank of America argues that as the mortgage lender or servicer, it is not a debt collector and that the Dowlings' mortgage loan does not constitute debt under the FDCPA. (*See* Doc. No. 61-1 at 5–9.)

Under the FDCPA, a "debt collector" is one who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). An entity is not a "debt collector" where its only role in the debt collection process is the enforcement of a security interest, or where it is taking actions to facilitate a non-judicial foreclosure, such as sending a notice of default or notice of sale. *Ho*, 858 F.3d at 572–73. In addition, consistent with the statutory definition, courts in this circuit have generally recognized that debt collectors do not include a consumer's creditors, mortgage servicing companies, or an assignee of debt, as long as the debt

---

[4] Plaintiff also cites deposition testimony in unrelated cases involving Bank of America's loan modification practices. (*See id.* at 46–50.) Such evidence is simply not relevant to the issue of whether defendant intended to and did act with extreme and outrageous conduct toward plaintiff Dowling in this case.

was not in default at the time it was assigned. *See, e.g.*, *Knockum v. BAC Home Loans Servicing, L.P.*, No. 2:12-cv-00416-GEB-DAD, 2012 WL 3730755, at *4 (E.D. Cal. Aug. 27, 2012) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1211 (N.D. Cal. 2012) ("Because Aurora became servicer to Mr. Jara's loan before he defaulted, Aurora cannot be a 'debt collector' for purposes of the FDCPA." (citing 15 U.S.C. § 1692a(6)(F)(iii))), *aff'd sub nom. Jara v. Aurora Loan Servs., LLC*, 633 F. App'x 651 (9th Cir. 2016); *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1053 (C.D. Cal. 2012).

Here, the court must conclude that defendant Bank of America is not a debt collector under the FDCPA. First, the evidence before this court on summary judgment establishes that the interest in the Dowlings' loan was acquired once in 2008, well before the Dowlings first defaulted. To the extent the name of the creditor or the mortgage servicer was later changed, or to the extent such entities were ultimately merged into Bank of America, N.A., the evidence on summary judgment is undisputed that the Dowlings' loan was not in default at the time Bank of America or its predecessor entities obtained an interest that loan. *See* 15 U.S.C. § 1692a(6)(F)(iii). Second, there is no evidence before the court on summary judgment to suggest that defendant was engaged in more than the type of activity that has been expressly held not to constitute debt collection.

Plaintiff argues that defendant's status as a debt collector is supported by two letters she received from the loan trustee in September 2012: (1) a debt validation notice, which stated the amount she owed on the loan, and (2) a notice of default and election to sell. (*See* Doc. No. 66 at 53–55; PMF ¶¶ 52–53.) However, even if the actions of the trustee are attributable to defendant Bank of America, these communications only establish that Bank of America was, at most, enforcing its security interest in the mortgage and facilitating of a non-judicial foreclosure. *See Ho*, 858 F.3d at 572–73. Accordingly, because no reasonable jury could conclude that defendant Bank of America acted as a debt collector as to plaintiff, either in its capacity as creditor or as mortgage servicer, summary judgment with respect to plaintiff's fourth and fifth causes of action must be granted in favor of defendants.

/////

**C.     Sixth Cause of Action: Violation of California Homeowners Bill of Rights**

California's so-called Homeowner Bill of Rights ("HBOR") was designed "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options . . . such as loan modifications or other alternatives to foreclosure." Cal. Civ. Code § 2923.4(a). Civil Code Section 2923.7, under which plaintiff's sixth cause of action is brought, provides in relevant part:

> Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

Cal. Civ. Code § 2923.7(a). The HBOR provides a private cause of action for a "material violation" of § 2923.7.[5] If a trustee's deed upon sale has not been recorded, as is the case here, a borrower may bring an action for injunctive relief to enjoin a material violation, in addition to any trustee's sale, until a court determines that the violation has been remedied. Cal. Civ. Code § 2924.12(a).

Here, it is undisputed that plaintiff obtained a permanent modification of her loan in April 2014, before this action was filed. (*See* DMF ¶ 10; Declaration of Brenda Dowling (Doc. No. 66-5) ("Dowling Decl.") ¶ 79.) Even if defendant Bank of America had violated § 2923.7, such a violation cannot be material because plaintiff was afforded a meaningful opportunity to obtain, and in fact did obtain, an alternative to foreclosure in the form of a loan modification.[6]

---

[5] Materiality under § 2924.12 has not been defined, neither by the statute itself nor by published decisions of California courts. However, consistent with the stated purpose of the HBOR, federal district courts have concluded that a material violation must interfere with a homeowner's right to be "considered for" or to have "a meaningful opportunity" to obtain a loan modification or other foreclosure alternative. *See, e.g.*, *Boone v. Specialized Loan Servicing LLC*, No. 15-CV-02224-DMR, 2015 WL 4572429, at *4 (N.D. Cal. July 29, 2015); *Gonzales v. Citimortgage, Inc.*, No. C-14-4059 EMC, 2015 WL 3505533, at *5 (N.D. Cal. June 3, 2015); *Segura v. Wells Fargo Bank, N.A.*, No. 14–04195, 2014 WL 4798890, at *7 (C.D. Cal. Sept. 26, 2014).

[6] To the extent plaintiff states that after executing the loan modification agreement, she was told by a third party that her property was in foreclosure (*see* "Dowling Decl." ¶ 79), there is no dispute that the loan modification process had been completed by that time. Thus, any foreclosure proceedings contemplated or occurring after execution of the loan modification agreement would not have stemmed from a material violation of § 2923.7.

Consequently, plaintiff's HBOR claim under § 2923.7 has been rendered moot by plaintiff's having obtained a loan modification. *See, e.g.*, *Tuan Anh Le v. Bank of N.Y. Mellon*, 152 F. Supp. 3d 1200, 1215 (N.D. Cal. 2015) ("[A]ny violation of § 2923.7 is similarly mooted, because Plaintiff obtained a subsequent review of his modification application during the stay in the litigation, resulting in effectively obtaining injunctive relief."). Therefore, summary judgment as to this cause of action must be granted in defendant's favor as well.

## CONCLUSION

Accordingly,

1. Defendant Bank of America's motion for partial summary judgment (Doc. No. 61) is granted;
2. Judgment is entered in favor of defendant Bank of America and against plaintiff Dowling on plaintiff's amended complaint as to her third, fourth, fifth, and sixth causes of action;
3. The action now proceeds only on plaintiff's first cause of action for breach of contract, second cause of action for conversion, and seventh cause of action for violations of California's Unfair Competition Law; and
4. The parties are directed to contact Courtroom Deputy Renee Gaumnitz at (559) 499-5652, or RGaumnitz@caed.uscourts.gov, within ten days of service of this order regarding the re-scheduling of the Final Pretrial Conference and Jury Trial dates in this case.

IT IS SO ORDERED.

Dated: **August 1, 2017**

_____
UNITED STATES DISTRICT JUDGE